1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   MARK E. DELEO,                    )   No. CV-07-2444-PHX-GMS
                                      )
10            Plaintiff,              )   **ORDER**
                                      )
11   vs.                              )
                                      )
12                                    )
     MICHAEL J. ASTRUE, Commissioner of)
13   Social Security,                 )
                                      )
14            Defendant.              )
                                      )
15   _____ )

16

17            Pending before the Court are the Motion for Summary Judgment of Plaintiff Mark E.

18   Deleo (Dkt. # 16) and the Cross-Motion for Summary Judgment of Defendant Michael J.

19   Astrue, Commissioner of Social Security (Dkt. # 22).  For the reasons set forth below, the

20   Court grants Plaintiff's motion and denies Defendant's cross-motion.

21                              **BACKGROUND**

22            On April 21, 2005, Plaintiff applied for disability benefits, alleging a disability onset

23   date of April 12, 2005. (R. at 21; R. at 75-77.) Plaintiff's claim was denied both initially and

24   upon reconsideration.   (R. at 21; R. at 65-67, 70-72.)   Plaintiff then appealed to an

25   Administrative Law Judge ("ALJ"). (R. at 21; R. at 86-93.) The ALJ conducted a hearing

26   on the matter on March 6, 2007. (R. at 21; R. at 300-31.)

27

28

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520 (2003).[1]  (R. at 21-27.)  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity.  (R. at 23.)  At step two, the ALJ determined that Plaintiff suffered from the severe impairments of affective disorder, attention deficit hyperactivity disorder, Asperger's syndrome, and anxiety disorder.  (*Id.*)  At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments.  (*Id.*)

At step four, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"),[2] concluding that Plaintiff had no exertional limitations but was limited to simple tasks and low stress work with no high production quotas and only minimal interaction with the public, co-workers, and supervisors.  (R. at 24.)  The ALJ thus determined that Plaintiff

---

[1]Under that test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations.  If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past.  Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy.  This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2]RFC is the most the claimant can do despite the limitations caused by his impairments.  *See* SSR 96-8p (July 2, 1996).

1   retained the RFC to perform his past relevant work as a grocery stocker and produce worker.

2   (R. at 26.)   The ALJ also reached step five, determining that Plaintiff could perform a

3   significant number of other jobs in the national economy that met his RFC limitations.   (R.

4   at 27.)   Therefore, the ALJ concluded that Plaintiff was not disabled.   (*Id.*)

5        The Appeals Council decided to review the decision.   (R. at 8-11.)   The Council

6   accepted the ALJ's statements of the law, the issues in the case, and the evidentiary facts, as

7   well as the ALJ's findings and ultimate conclusions regarding whether Plaintiff was disabled.

8   (R. at 8.)   The Council, however, supplemented the ALJ's decision with additional rationale.

9   (R. at 9-10.)   The Council thereupon agreed that Plaintiff was not disabled.   (R. at 11.)

10        Plaintiff filed the complaint underlying this action on December 4, 2007, seeking this

11   Court's review of the ALJ's denial of benefits.[3]   (Dkt. # 1.)   Plaintiff filed his Motion for

12   Summary Judgment on May 15, 2008.   (Dkt. # 16.)   Defendant filed his Cross-Motion for

13   Summary Judgment on June 5, 2008.   (Dkt. # 22.)

14                                   **DISCUSSION**

15   **I.     Standard of Review**

16        A reviewing federal court will only address the issues raised by the claimant in the

17   appeal from the ALJ's decision.   *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

18   A federal court may set aside a denial of disability benefits only if that denial is either

19   unsupported by substantial evidence or based on legal error.   *Thomas v. Barnhart*, 278 F.3d

20   947, 954 (9th Cir. 2002).   Substantial evidence is "more than a scintilla but less than a

21   preponderance."   *Id.* (quotation omitted).   "Substantial evidence is relevant evidence which,

22   considering the record as a whole, a reasonable person might accept as adequate to support

23   a conclusion."   *Id.* (quotation omitted).

24

25

26        [3]Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any
27   individual, after any final decision of the Commissioner of Social Security made after a
    hearing to which he was a party . . . may obtain a review of such decision by a civil action
28   . . . .").

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II.    Analysis

Plaintiff argues that the ALJ's decision, even as supplemented by the Appeals Council, was erroneous because: (A) the decision improperly rejects the opinion of Dr. Levitt, a treating physician (Dkt. # 21 at 3-8); (B) the decision improperly rejects the opinion of Dr. Lawrence, another treating physician (*id.* at 8-14); (C) the decision improperly rejects the opinion of Dr. Tromp, an examining physician (*id.* at 14-17); (D) the decision improperly relies on the opinion of Dr. Rothbaum, a non-examining, non-testifying physician (*id.* at 17-21); and (E) the decision improperly rejects Plaintiff's subjective complaint testimony (*id.* at 21-25).

### A.    Rejection of Dr. Levitt's Opinion

Plaintiff argues that the decision of the ALJ, as supplemented by the Appeals Council, improperly rejects the opinion of Dr. Levitt, a treating physician. (Dkt. # 21 at 3-8.)

#### 1.    Legal Standard

"The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). "The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Id.* at 762 (internal quotations omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

1  conflicting clinical evidence, stating his interpretation thereof, and making findings."

2  *Embrey*, 849 F.2d at 421 (quotation omitted).

3      Moreover, clear and convincing reasons are required to reject a treating physician's

4  subjective judgments and ultimate conclusions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

5  1996); *Embrey*, 849 F.2d at 422 ("The subjective judgments of treating physicians are

6  important, and properly play a part in their medical evaluations. Accordingly, the ultimate

7  conclusions of those physicians must be given substantial weight; they cannot be disregarded

8  unless clear and convincing reasons for doing so exist and are set forth in proper detail.").

9              **2.      Application**

10     Plaintiff disputes the ALJ's decision to partly reject Dr. Levitt's medical assessment

11 of Plaintiff's ability to perform work-related activity. (R. at 261-62.) In the assessment, Dr.

12 Levitt explained that Plaintiff has a "moderately severe" impairment (i.e., an impairment that

13 "seriously affects ability to function") in his abilities to "relate to other people," "respond

14 appropriately to co-workers," "respond to customary work pressures," "perform complex

15 tasks," and "complete a normal workday/workweek without interruptions from

16 psychologically based symptoms and to perform at a consistent pace without an unreasonable

17 number/length of rest periods."[4] (*Id.*) Dr. Levitt further provided that these limitations lasted

18 for more that twelve months. (R. at 262.) According to the testifying vocational expert, the

19 limitations described by Dr. Levitt, if accepted as true, would preclude the ability to sustain

20 work on a regular and continuing basis. (*See* R. at 329-30.)

21     The ALJ made the following assessment of Dr. Levitt's opinion:

22          The opinion of Michael Levitt, M.D., dated January 8, 2007, is
            given some weight because significant limitations in the
23          claimant's ability to deal with the public, co-workers,
            supervisors, and work stresses are supported by the evidence as
24          a whole. However, the undersigned finds that a moderately

25

26      [4]The eight other assessments Dr. Levitt made indicated impairments that were either
   mild (i.e., "suspected impairment of slight importance which does not affect ability to
27 function") or moderate (i.e., "an impairment which affects but does not preclude ability to
28 function"). (R. at 261-62.)

1
2
3

> severe limitation in his ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number/length of rest periods is not supported by the evidence of record for a continuous period of 12 months.

4  (R. at 26.)  The ALJ provided no further explanation, and the Appeals Council offered no

5  supplemental reasoning on this point.  (*See* R. at 8-10.)

6     By failing to explain what "evidence of record" contradicted Dr. Levitt's opinion, the

7  ALJ committed reversible error.  "To say that medical opinions are not supported by

8  sufficient objective findings or are contrary to the preponderant conclusions mandated by the

9  objective findings does not achieve the level of specificity our prior cases have required,

10  even when the objective factors are listed seriatim." *Embrey*, 849 F.2d at 421.  Rather, "[t]he

11  ALJ must do more than offer his conclusions.  *He must set forth his own interpretations and*

12  *explain why they, rather than the doctors', are correct*." *Id.* at 421-22 (emphasis added).

13  Further, because Dr. Levitt was offering both a subjective judgment and an ultimate

14  conclusion (as to whether Plaintiff could "complete a normal workday/workweek"), the ALJ

15  was required to provide not only specific and legitimate reasons for rejecting his opinion, but

16  clear and convincing reasons for doing so, *Lester*, 81 F.3d at 830; *Embrey*, 849 F.2d at 422,

17  and those reasons must be "set forth in proper detail," *Embrey*, 849 F.2d at 422.  In this case,

18  the ALJ did not offer any explanation for rejecting Dr. Levitt's assessment, much less

19  provide detail for his reasoning.  (*See* R. at 26.)  Thus, the ALJ erred.

20     Defendant argues that the global assessment of functioning ("GAF")[5] scores in Dr.

21  Levitt's progress treatment notes "contradict his . . . January 2007 check-off opinion," and

22  thus that the ALJ properly rejected Dr. Levitt's opinion.  (Dkt. # 24 at 9.)  This argument

23  fails for three reasons.  First, the ALJ never based his rejection of Dr. Levitt's opinion on

24  those scores; the ALJ simply stated that the opinion "is not supported by the evidence of

25  record." (R. at 26.)  The ALJ only mentioned GAF scores in rejecting Plaintiff's subjective

26

27     [5]The GAF scale ranges from 1 to 100 and reflects a person's overall psychological,
social, and occupational functioning. *See Diagnostic and Statistical Manual of Mental*

28  *Disorders* 32-34 (4th ed. 2000) (hereinafter "DSM-IV").

1    complaint testimony.  (*See id.*)  Because a district court may not affirm the ALJ's decision

2    on a ground that the ALJ did not invoke in making his decision, *Pinto v. Massanari*, 249 F.3d

3    840, 847-48 (9th Cir. 2001), the Court cannot assume that the ALJ based his decision on

4    these scores.

5         Second, the ALJ's conclusion that Plaintiff's GAF scores "are all in the moderate or

6    better range" is not supported by the evidence.  Plaintiff was determined to have a GAF score

7    of 45 on four separate occasions throughout 2005 and 2006.  (R. at 171, 201, 233, 276.)

8    GAF scores between 41 and 50 are not in the "moderate symptoms" range, but rather indicate

9    "serious symptoms" such as "serious impairment in social, occupational, or school

10   functioning (e.g., no friends, *unable to keep a job*)."  DSM-IV, *supra*, at 34 (emphasis

11   added).  Thus, to the extent that the ALJ intended to rely on "all" of Plaintiff's GAF scores

12   being in the "moderate or better range" in discounting Dr. Levitt's opinion, there is not

13   substantial evidence to sustain the ALJ's conclusion.

14        Third, and finally, even if the ALJ intended to rely on the GAF scores, and even if the

15   GAF scores could constitute substantial evidence, the ALJ still did not "explain why [his

16   interpretation], rather than the doctor[']s, [is] correct."  *Embrey*, 849 F.2d at 422.  Rather, the

17   ALJ's lone conclusory sentence on the GAF scores constitutes, at best, the "objective factors

18   [] listed seriatim" that the Ninth Circuit has found insufficient.  *Id.* at 421. Thus, the ALJ

19   would not have provided sufficient detail in explaining why the GAF scores outweighed Dr.

20   Levitt's opinion.

21        For all these reasons, the ALJ has committed reversible error.

22   **B.    Rejection of Dr. Lawrence's Opinion**

23        Plaintiff argues that the decision of the ALJ, as supplemented by the Appeals Council,

24   improperly rejects the opinion of Dr. Lawrence, a treating physician.  (Dkt. # 21 at 8-14.)

25

26

27

28

1          **1.     Legal Standard**

2          Because Dr. Lawrence is a treating physician, the legal standard applicable to his

3   opinion is the same as the legal standard applicable to Dr. Levitt's opinion.  *See supra* Part

4   II.A.1.

5          **2.     Application**

6          Plaintiff disputes the ALJ's decision to reject two opinions offered by Dr. Lawrence.

7   Each will be discussed in turn.

8          **a.     June 7, 2005 Assessment**

9          On June 7, 2005, Dr. Lawrence assessed Plaintiff as being "markedly limited" (i.e.,

10  having poor to no capacity) in: (1) "the ability to carry out detailed instructions," (2) "the

11  ability to work in coordination with or proximity to others without being distracted by them,"

12  and (3) "the ability to interact appropriately with the general public." (R. at 235-39.)  Dr.

13  Lawrence assessed Plaintiff as being "moderately limited" in nine other work-related areas.

14  (*Id.*)   According to the testifying vocational expert, the limitations described by Dr.

15  Lawrence, if accepted as true, would preclude the ability to sustain work on a regular and

16  continuing basis.  (R. at 325-26.)

17         The ALJ rejected Dr. Lawrence's opinion "because the undersigned finds that marked

18  limitations in functioning are not supported by the evidence as a whole." (R. at 25-26.)  As

19  with Dr. Levitt's opinion, the ALJ did not lay out the conflicting medical evidence and made

20  no effort to explain why any such evidence was more persuasive than Dr. Lawrence's

21  opinion.  Thus, for the same reasons discussed in the context of Dr. Levitt's testimony, the

22  ALJ's rejection of Dr. Lawrence's testimony was erroneous. *See Lester*, 81 F.3d at 830;

23  *Embrey*, 849 F.2d at 421-22.[6]

24

25         _____

26         [6]Defendant again argues that the ALJ relied on Plaintiff's GAF scores, but, as explained above, the ALJ relied on those scores in the context of Plaintiff's subjective complaint testimony, the ALJ mischaracterized those scores, and, in any event, the ALJ's one sentence on those scores would not be sufficient to provide the requisite level of detail. *See*

27

28  *supra* Part II.A.2.

1    The Appeals Council, apparently recognizing this deficiency, supplemented the ALJ's

2    decision with the following rationale:

> Dr. Lawrence completed a medical source statement dated June 7, 2005, indicating that the claimant was moderately limited in many work related activities. However, it is unclear if Dr. Lawrence was treating the claimant during this time period. The medical source statement indicates that he first saw the claimant on September 13, 2003[,] and last saw him on November 19, 2004. Dr. Lawrence's address is Rochester, New York, and the date that Dr. Lawrence reported that he last saw the claimant appears to coincide with the clamant's move to Arizona. Therefore, the Administrative Law Judge's finding that this opinion is accorded little weight is supported.

9    (R. at 9 (citation omitted).)

10    This additional rationale, however, is not supported by substantial evidence. The

11    Council states that the record is ambiguous as to whether Plaintiff was still being treated by

12    Dr. Lawrence at the time of the assessment or if Plaintiff had moved away and thus

13    discontinued treatment. (*See id.*) The record, however, contains a progress note and

14    treatment plan review authored by Dr. Lawrence on July 20, 2005, which is after the

15    assessment in question. (R. at 233.) Dr. Lawrence also authored a letter on the same date,

16    after the assessment at issue, in which he stated that "Mr. Deleo has been a patient under my

17    care since September 2002." (R. at 231.) Thus, it is evident that Plaintiff was still in the

18    course of treatment when this assessment was completed. Because neither the ALJ nor the

19    Appeals Council has articulated a sufficient justification for discounting Dr. Lawrence's

20    assessment on June 7, 2005, the Court finds reversible error.[7]

21                            **b.     July 20, 2005 Assessment**

22    On July 20, 2005, Dr. Lawrence authored a letter stating:

> In spite of [Plaintiff's] continual aggressive treatment of his condition of Bipolar Mood Disorder Type 2 . . . with medication and psychotherapy, his ability to work has been significantly

25

26    [7]Because the Appeals Council's rationale is not supported by substantial evidence, the

27    Court need not reach the parties' arguments about whether the Council was required to develop the record or whether Dr. Lawrence's opinion would still be entitled to deference

28    even if treatment had previously ceased.

> impaired.  His fluctuating and cyclical condition has rendered him unable to work reliably and consistently.  I expect this disability to continue for at least 18-24 months.

(R. at 231.)  The ALJ rejected that opinion because "the evidence as a whole shows that his condition is stable on medication."  (R. at 26.)  The ALJ also found Dr. Lawrence's opinion in this letter to be inconsistent with Plaintiff's "active lifestyle."  (*Id.*)  The Appeals Council offered no additional rationale on this point.  (*See* R. at 8-10.)

These statements fail to meet the standard for rejecting the opinion of a treating physician.  First, the ALJ offers no explication of his statement that "the evidence as a whole shows that [Plaintiff's] condition is stable on medication."  (R. at 26.)  As explained above, the ALJ can meet his burden for rejecting a treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Embrey*, 849 F.2d at 421 (quotation omitted).  The ALJ made no effort to do so here.  To the extent that the ALJ was relying on his later statement that Plaintiff's GAF scores "are all in the moderate or better range" (which, the Court repeats, was made in the context of Plaintiff's subjective complaint testimony), the ALJ's statement is not supported by substantial evidence because Plaintiff had a number of GAF scores that would preclude sustained work.  (*See* R. at 171, 201, 233, 276.)  Thus, the ALJ's statement that Plaintiff "is stable on medication" is not sufficient for discounting the opinion of a treating physician.

With respect to the ALJ's statement about Plaintiff's "active lifestyle," the ALJ has again failed to provide the requisite "detailed and thorough summary of the facts."  *Embrey*, 849 F.2d at 421.  The closest approximation to such a factual summary is the ALJ's statement that Plaintiff "reported at ValueOptions that he liked to play pool, go bowling, watch television, and surf the internet" (R. at 26).  The Court finds that statement deficient for a number of reasons.

First, the ALJ made the statement in the course of rejecting Plaintiff's subjective complaint testimony, not in rejecting Dr. Lawrence's opinion.  (*See id.*)  Second, that one sentence can hardly be described as either "detailed" or "thorough"; it is, in fact, one phrase

1    pulled from a nine-page evaluation that elsewhere diagnosed Plaintiff with Psychotic

2    Disorder, Pervasive Developmental Disorder, and Bipolar Disorder.  (R. at 267.)

3             Third, the ALJ took the statement out of context, which constitutes error.  *See Reddick*

4    *v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (holding that the ALJ erred because he

5    "developed his evidentiary basis by not fully accounting for the context of materials or all

6    parts of the testimony and reports," including reports of the claimant's regular activities).

7    The statement that Plaintiff "likes to play pool, go bowling, watch TV, and surf the internet"

8    is located in the report's section on the "*availability*" of a support system.  (R. at 266

9    (emphasis added).)  The report's sections on Plaintiff's *actual* daily activities and *actual*

10   leisure activities contain no mention of these facts.  (*See* R. at 265, 269.)  Even if they did,

11   the fact that a claimant "likes to" play pool, go bowling, watch television, or use the internet

12   does not lead to the conclusion that the claimant does so with the frequency that the ALJ

13   assumed in characterizing Plaintiff as leading an "active lifestyle."  (*See* R. at 26.)  Indeed,

14   elsewhere in the record Plaintiff reported that "he spends most of his time watching tv and

15   doing crossword puzzles. *He does not like going out to the mall or other public places . . .*

16   ."  (R. at 224.)  Thus, there is not substantial evidence to support the ALJ's finding that

17   Plaintiff led an "active lifestyle."

18            Finally, while a claimant's regular activities may be considered in evaluating

19   symptoms, those activities must be somehow transferable to the work setting.  *See Smolen*

20   *v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  "Disability does not mean that a claimant

21   must vegetate in a dark room excluded from all forms of human and social activity." *Cooper*

22   *v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted).  The ALJ offers no

23   explanation as to how playing pool, going bowling, watching television, and surfing the

24   internet are relevant to whether Plaintiff's mental ailments precluded sustained and regular

25   work – much less an explanation as to why those activities should displace the medical

26   opinion of a treating physician.

27            For all these reasons, the ALJ erred in rejecting Dr. Lawrence's assessments, and that

28   error was not cured by the Appeal Council's supplemental rationale.

1

        **C.      Rejection of Dr. Tromp's Opinion**

2              Plaintiff argues that the decision of the ALJ, as supplemented by the Appeals Council,

3  improperly rejects the opinion of Dr. Tromp, an examining physician.  (Dkt. # 21 at 14-17.)

4

            **1.     Legal Standard**

5              An ALJ generally should give more weight to the opinion of an examining physician

6  than to opinions of nonexamining physicians.  *Andrews*, 53 F.3d at 1041; 20 C.F.R.

7  § 416.927(d)(1).  As with a treating physician, the ALJ may reject the opinion of an

8  examining physician, even if contradicted by a nonexamining physician, only by providing

9  specific, legitimate reasons that are supported by substantial evidence.  *Moore v. Comm'r of*

10  *Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

11

            **2.     Application**

12              On July 13, 2005, Dr. Tromp conducted a mental status examination of Plaintiff.  (R.

13  at 222-25).  Dr. Tromp diagnosed Plaintiff as having "longstanding bipolar symptoms,"

14  manifesting as "most often depressed but does have occasional manic episodes." (R. at 225.)

15  Dr. Tromp further concluded that Plaintiff "suffers from depressed mood, irritability, difficult

16  interpersonal relationships, occasional rage and impulse control problems." (*Id.*)  Although

17  Plaintiff's cognitive performance was "adequate on the [mental status exam] conducted

18  during [the] examination," Dr. Tromp explained that Plaintiff "suffers from very low

19  motivation at times, and has difficulty with organizing, planning and following through on

20  tasks." (*Id.*)  Dr. Tromp also observed that Plaintiff "is not likely to handle stress well for

21  the most part."  (*Id.*)

22              On July 27, 2005, Dr. Tromp filled out a work capacity assessment similar to the one

23  filled out by Dr. Lawrence on June 7, 2005. (R. at 226-30.)  Dr. Tromp assessed Plaintiff as

24  being "markedly limited" in seven areas: (1) "ability to perform activities within a schedule,

25  maintain regular attendance, and be punctual," (2) "ability to work in coordination with or

26  proximity to others without being distracted by them," (3) "ability to interact appropriately

27  with the general public," (4) "ability to accept instructions and respond appropriately to

28  criticism from supervisors," (5) "ability to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes," (6) "ability to set realistic goals or make plans independently of others," and (7) "ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number/length of rest periods." (*See id.*)  Dr. Tromp also assessed Plaintiff has being "moderately limited" in eight work-related areas.[8] (*See id.*)

According to the testifying vocational expert, the limitations described by Dr. Tromp, if accepted as true, would preclude the ability to sustain work on a regular and continuing basis. (R. at 328-29.)  In fact, the expert testified that if Plaintiff was "markedly limited" in the "ability to complete a normal workday/workweek without interruptions from psychologically based symptoms," that limitation *alone* would preclude work. (R. at 329.)

The ALJ assigned Dr. Tromp's opinion less weight than that of a nonexamining physician on the following reasoning:

> The opinion of Dr. Tromp with regard to the claimant's ability to do work-related mental activities is given less weight than the State agency medical consultant's opinion because the undersigned finds that marked limitations in functioning are inconsistent with Dr. Tromp's narrative report and with the evidence as a whole.

(R. at 25.) Once again, the ALJ did not explain what evidence in the record conflicted with Dr. Tromp's assessment. (*See id.*)  The ALJ likewise did not explain what elements of Dr. Tromp's narrative report were inconsistent with the assessment. (*See id.*)  As explained above, the ALJ's failure to lay out the evidence and to explain his interpretation of that evidence in proper detail constitutes error. *See Lester*, 81 F.3d at 830; *Embrey*, 849 F.2d at 421-22.

The Appeals Council offered two additional rationales to buttress the ALJ's reasoning. (R. at 9.) The Council stated that the ALJ was justified in rejecting Dr. Tromp's opinion

---

[8]Dr. Tromp selected listed three capacities as being both "moderately limited" and "markedly limited," followed by handwritten explanatory comments. (R. at 226-30.)

1    because it "appears to be based on the claimant's subjective complaints" and "is not well

2    supported by her treatment notes."[9]  (*Id.*)

3         The Council's first rationale is not sufficiently developed to survive this Court's

4    review, for the Council does not explain what evidence in the record supports its conclusion

5    that Dr. Tromp based her opinion on Plaintiff's subjective complaints.  In any event, the

6    Council's rationale is not supported by substantial evidence, for Dr. Tromp's evaluation

7    explicitly provides that it is based on both a clinical interview with mental status exam and

8    a review of Plaintiff's treatment records.  (R. at 222.)  Thus, it is evident that Dr. Tromp did

9    not merely rely on Plaintiff's self-report of subjective complaints.

10         The Council's second rationale (that Dr. Tromp's opinion was not sufficiently

11    supported by her treatment notes) is also deficient, for several reasons.  First of all, the

12    Council only credited Dr. Tromp as having indicated that Plaintiff was "moderately limited"

13    in five areas, when in fact she selected eight such areas, and only credited her as indicating

14    that Plaintiff was "markedly limited" in two areas, when in fact Dr. Tromp indicated seven

15    such areas.  (*See* R. 226-30.)  One of the areas of marked limitation that the Council ignored

16    was the "ability to complete a normal workday/workweek without interruptions from

17    psychologically based symptoms" (*see* R. at 9), and the vocational expert testified that such

18    a limitation *by itself* would preclude work (R. at 329).  Thus, the Council's factual predicates

19    are simply mistaken, and for that reason its reasoning is not based on substantial evidence.

20         Additionally, while the Council did lay out ostensibly conflicting facts in Dr. Tromp's

21    evaluation – such as Plaintiff being "nicely dressed and well groomed," "socially appropriate,

22    oriented, and [] comfortable in his surroundings," and having normal "speech and motor

23    behavior" –  the Council never explained how those facts actually undermined Dr. Tromp's

24

25

---

26        [9]Because Dr. Tromp was not a treating physician, there were no "treatment notes" that

27    could either support or contradict her assessment.  The Court assumes that by "treatment notes" the Appeals Council was referring to Dr. Tromp's mental status examination, and will

28    evaluate the parties' arguments on that assumption.

1   assessment.  Thus, the Council did not interpret the facts as required.  *See Embrey*, 849 F.2d

2   at 421-22.

3          Finally, even if the Court had a basis to conclude that the facts at issue did inform Dr.

4   Tromp's diagnosis, and even if those facts were properly interpreted, the Council has

5   selectively relied on portions of the report that would tend to support its conclusion and

6   ignored those portions that would tend to contradict it.  The Ninth Circuit has made clear that

7   an ALJ's rejection of testimony is in error and not supported by substantial evidence if the

8   ALJ has "selectively focused on aspects of [medical records] which tend to suggest non-

9   disability[.]"  *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001); *see also Holohan*

10  *v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (holding that the ALJ erred by relying on

11  selective portions of treatment notes and failing to read a doctor's statements in the "context

12  of the overall diagnostic picture he [drew]"); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th

13  Cir. 1984) ("[The doctor's] report is uncontradicted and the Secretary's attempt to use only

14  the portions favorable to her position, while ignoring other parts, is improper.").

15         Here, the Appeals Council singled out portions of the report discussing Plaintiff's

16  interpersonal presentation to Dr. Tromp, yet it completely ignored Dr. Tromp's actual

17  "Conclusions" section, which provides that Plaintiff suffers from "longstanding bipolar

18  symptoms," "depressed mood, irritability, difficult interpersonal relationships, occasional

19  rage and impulse control problems," "very low motivation," and "difficulty with organizing,

20  planning and following through on tasks," and that Plaintiff "is not likely to handle stress

21  well for the most part."  (R. at 225.)  Because the Appeals Council "selectively focused on

22  aspects of [medical records] which tend to suggest non-disability," the Council's reasoning

23  is not supported by substantial evidence.  *Edlund*, 253 F.3d at 1159.

24

25

26

27

28

1    For all these reasons, the ALJ erred in affording less weight to Dr. Tromp's opinion

2    than to the nonexamining physician's opinion, and that error was not remedied by the

3    supplemental rationale of the Appeals Council.[10]

4    **D.    Reliance on Dr. Rothbaum's Opinion**

5    Plaintiff argues that the decision of the ALJ, as supplemented by the Appeals Council,

6    improperly relies on the opinion of Dr. Rothbaum, a non-examining physician.  (Dkt. # 21

7    at 17-21.)

8    **1.    Legal Standard**

9    If a nontreating physician's opinion contradicts the opinion of a treating physician,

10   but is not based on independent clinical findings or rests on clinical findings also considered

11   by the treating physician, then the ALJ may rely on the nontreating physician's testimony to

12   reject the treating physician's testimony only by providing specific, legitimate reasons that

13   are supported by substantial evidence.  *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600

14   (9th Cir. 1999).  "Substantial evidence" can be the opinions of nonexamining physicians

15   "when [those opinions] are supported by other evidence in the record and are consistent with

16   it."  *Id.*  "The ALJ can meet this burden by setting out a detailed and thorough summary of

17   the facts and conflicting clinical evidence, stating his interpretation thereof, and making

18   findings."  *Id.* at 600-01 (quotation omitted).

19

20

21

---

22   [10]Defendant argues that this Court should find no error because "Dr. Trompe [sic]

23   judged Plaintiff to be markedly limited in his ability to get along with coworkers or peers
     without distracting them or exhibiting behavioral extremes . . . yet there is nothing either in
     Plaintiff's past work history indicating such behavior, nor in her report." (Dkt. # 24 at 10.)

24   Dr. Tromp's report, however, contains a number of statements supporting her conclusion in

25   this regard.  For instance, the report contains Plaintiff's statements that had been transferred
     in one past job because of "the rage people felt from me," and transferred at another past job

26   because of "mood and behavioral problems," specifically "the way [he] was interacting with
     coworkers."  (R. at 222, 224.)  Plaintiff also reported that he "withdraw[s] from his

27   coworkers" generally and "becomes fearful of others for no reason."  (R. at 222.)  Thus,

28   Defendant's argument is incorrect.

1        **2.    Application**

2        On August 3, 2005, Dr. Rothbaum, a non-treating, nonexamining physician,

3    completed an evaluation of Plaintiff based on his review of the record. (R. at 204-221.) Dr.

4    Rothbaum concluded that Plaintiff suffered from affective disorders (R. at 204) that imposed

5    mild restrictions on his activities of daily living and moderate difficulties in maintaining

6    social functioning and maintaining concentration, persistence, and pace (R. at 214).

7    Specifically, Dr. Rothbaum found Plaintiff "moderately limited" in: (1) "the ability to

8    maintain attention and concentration for extended periods," (2) "the ability to work in

9    coordination with or proximity to others without being distracted by them," (3) "the ability

10   to interact appropriately with the general public," (4) "the ability to get along with coworkers

11   or peers without distracting them or exhibiting behavioral extremes," (5) "the ability to

12   respond appropriately to changes in the work setting," and (6) "the ability to complete a

13   normal workday and workweek without interruptions from psychologically based symptoms

14   and to perform at a consistent pace without an unreasonable number and length of rest

15   periods." (R. at 218-19.) Dr. Rothbaum did not assess Plaintiff as being "markedly limited"

16   on any work-related dimension.  (*See id.*)

17       The ALJ found that "the opinion of the State agency medical consultant, dated August

18   3, 2005, with regard to the claimant's mental residual functional capacity and the "B"

19   criteria, is given significant weight because the undersigned finds that it is consistent with

20   the evidence as a whole." (R. at 25.)  The ALJ offered no further exposition on this point

21   (*see id.*), and the Appeals Council did not discuss Dr. Rothbaum's opinion other than to note

22   that "the Administrative Law Judge adopted the state agency opinion" (R. at 9).

23       Plaintiff mounts two main objections to the ALJ's reliance on Dr. Rothbaum's

24   testimony. First, Plaintiff challenges Dr. Rothbaum's report as being "speculative and based

25   on mistaken beliefs."  (*See* Dkt. # 21 at 17-19.)  Plaintiff argues that Dr. Rothbaum's

26   statement that "it is not clear [Plaintiff] is taking meds" (R. at 216) is inconsistent with Dr.

27   Tromp's report, on which Dr. Rothbaum relied, which states that Plaintiff "takes nafazadone,

28   wellbutrin, clonipin, and lithium" and "is compliant" with those medications (R. at 223).

1   However, the fact that Plaintiff reported taking medications on July 13, 2005, is not

2   conclusive proof that he was still taking medications on August 3, 2005, nor does it establish

3   that he had been compliant at all times relevant to his disability claim.  Thus, the Court

4   cannot say that Dr. Rothbaum's statement that "it is not clear" that Plaintiff was taking

5   medications was "mistaken."   Plaintiff's other arguments in this regard – that Dr.

6   Rothbaum's opinion conflicted with a ValueOptions benefits assessment and gave too much

7   weight to Plaintiff's past work history – are not properly before this Court.  Resolving

8   conflicts in testimony, determining credibility, and resolving ambiguities in the evidence is

9   the exclusive province of the ALJ.  *See Andrews*, 53 F.3d at 1039.  Thus, the Court cannot

10  conclude that the ALJ erred simply in relying on the opinion of Dr. Rothbaum.

11      Plaintiff's second argument, however – that Dr. Rothbaum's opinion could not

12  constitute substantial evidence for rejecting the opinions of Dr. Levitt, Dr. Lawrence, and Dr.

13  Tromp – is correct. (Dkt. # 21 at 19-21.)  First, as explained above, the ALJ failed to provide

14  sufficient explanation for why he was rejecting those doctors' opinions.  Indeed, the ALJ

15  never stated that he was rejecting those opinions based on Dr. Rothbaum's report; the ALJ

16  only stated that he was affording the report "significant weight." (R. at 25.)  Even assuming

17  that the ALJ did intend to incorporate that weight into his rationale for rejecting the treating

18  and examining doctors' opinions, the ALJ still failed to provide any explanation beyond

19  stating that Dr. Rothbaum's report was "consistent with the evidence as a whole." (R. at 25.)

20  Thus, the ALJ did not meet his burden of laying out "specific, legitimate reasons" by

21  providing "a detailed and thorough summary of the facts and conflicting clinical evidence,

22  stating his interpretation thereof, and making findings." *Morgan*, 169 F.3d at 600-01.

23      Additionally, even if this explanation were sufficient, Dr. Rothbaum's opinion is not

24  "supported by other evidence in the record."  *See id.* at 600.  Defendant asserts that Dr.

25  Tromp's report and Plaintiff's GAF scores constitute such supportive evidence. (Dkt. # 24

26  at 12-13.)  Defendant does not explain that argument beyond this mere assertion, and thus

27  it is waived.  *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)

28  ("[W]e review only issues which are argued specifically and distinctly[.]").  Moreover,

neither the ALJ nor the Appeals Council advanced such an argument, and thus this Court may not consider it.  *Pinto*, 249 F.3d at 847-48 (holding that a district court may not affirm the ALJ's decision on a ground that the ALJ did not invoke in making his decision). Regardless, the Court is unable to locate any material in Dr. Tromp's report that would establish Plaintiff as being only moderately impaired, as opposed to markedly impaired, *see supra* Part II.C.2, and, in fact, Dr. Rothbaum's assessment is in direct conflict with Dr. Tromp's assessment, which lists Plaintiff as being "markedly limited" in seven areas and "moderately limited" in eight.  (R. at 226-30.)  As explained above, the ALJ's conclusion that Plaintiff's GAF scores were all in the moderate or better range is not supported by substantial evidence, for those scores fluctuated to as low as 45 several times throughout Plaintiff's treatment.  *See supra* Part II.A.2.  Thus, those scores do not support Dr. Rothbaum's opinion. While there may be other evidence in the record that supports Dr. Rothbaum's opinion, neither the ALJ nor Defendant has articulated such evidence, and thus the Court cannot find that it exists.

In sum, although the Court cannot conclude that the ALJ erred in relying on Dr. Rothbaum's opinion, the ALJ's failure to explain that opinion, and the fact that the opinion was not sufficiently supported by other evidence, prevents the Court from finding that the opinion constituted substantial evidence for rejecting the opinions of the treating and examining doctors.

**E.      Rejection of Plaintiff's Subjective Complaint Testimony**

Finally, Plaintiff argues that the decision of the ALJ, as supplemented by the Appeals Council, improperly rejects his subjective complaint testimony.  (Dkt. # 21 at 21-25.)

**1.      Legal Standard**

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)).  "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based

solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Specifically:

> The ALJ may consider at least the following factors when weighing the claimant's credibility: [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas*, 278 F.3d at 958-59 (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Id.* at 958.

### 2. Application

Plaintiff reported that his mental problems cause depression, a loss of energy and motivation, and a general inability to function that interferes with his capacity to sustain regular work. (*See* R. at 307-10.) The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but [] the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible." (R. at 26.) In so reasoning, the ALJ relied on five factors:

> First, [Plaintiff] testified that he was able to travel by himself, visiting family and friends in New York for two weeks and in Florida for five weeks. Second, he reported at ValueOptions on October 3, 2006[,] that he did volunteer work at Triple R and sometimes went to an animal shelter to help out. He said he was a fast learner, dependable, and easy to get along with. Third, his [GAF] scores are all in the moderate or better range. His condition has improved since being in Arizona and appears to be stable. Fourth, his condition remains stable on medication. If compliant with taking his medications and doing lower stress work, he should be able to engage in substantial gainful activity. Fifth, he engaged in normal activities of daily living. He reported at ValueOptions that he liked to play pool, go bowling, watch television, and surf the internet.

1   (R. at 26.) The Appeals Council reiterated the same information in its supplemental decision.

2   (R. at 9-10.)

3        As explained above, the ALJ's statement that Plaintiff's GAF scores "are all in the

4   moderate or better range" is not supported by substantial evidence.  As also outlined above,

5   the ALJ has not sufficiently explained how the fact that Plaintiff "liked to play pool, go

6   bowling, watch television, and surf the internet" informs his residual functional capacity,

7   which in this case is defined by Plaintiff's *mental* limitations, not any *physical* limitations.

8   In the same way, the ALJ has not properly explained and supported his conclusion that

9   Plaintiff "was stable on medication" given the fluctuation in Plaintiff's GAF scores and the

10  opinions of two treating physicians and one examining physician to the contrary.  Thus, in

11  its current form, the ALJ's findings are not "sufficiently specific to permit the court to

12  conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d

13  at 958.  Thus, the ALJ erred in the manner in which it discounted Plaintiff's subjective

14  complaint testimony.[11]

15       Because the ALJ committed legal error and made findings unsupported by substantial

16  evidence, the Court sets aside the ALJ's denial of benefits.  *See Thomas*, 278 F.3d at 954.

17

18

19

20

21

22

23

24       [11]The other two factors on which the ALJ relied – that Plaintiff "was able to travel by

25  himself" and "did volunteer work" – are supported by substantial evidence in the record.
    (*See* R. at 314; R. at 269.)  However, because the ALJ did not find that each factor was

26  independently sufficient to reject Plaintiff's subjective complaint testimony, the Court cannot

27  conclude that the ALJ's error was harmless. *See Batson*, 359 F.3d at 1197 (finding an ALJ's
    error was harmless because the court determined that the error did not affect the ALJ's

28  ultimate conclusion).

1    **III.      Remedy**

2         Having decided to vacate the ALJ's decision, the Court has the discretion to remand

3    the case either for further proceedings or for an award benefits.  *See Reddick*, 157 F.3d at

4    728.  The rule in this Circuit is that the Court should:

5                   credit[] evidence and remand[] for an award of benefits where
                    (1) the ALJ has failed to provide legally sufficient reasons for
6                   rejecting [certain] evidence, (2) there are no outstanding issues
                    that must be resolved before a determination of disability can be
7                   made, and (3) it is clear from the record that the ALJ would be
                    required to find the claimant disabled were such evidence
8                   credited.

9    *Smolen*, 80 F.3d at 1292.

10        Here, the Court is faced with a situation in which three physicians testified to

11   limitations that would prevent work, while a fourth testified to limitations that would not

12   prevent work.  The ALJ found the former testimony inconsistent with the record as a whole,

13   but failed to properly explain his conclusions and also based part of his reasoning on factual

14   suppositions not supported by the record.   The ALJ further suggested that the latter

15   testimony, on which the ALJ was entitled to rely, was sufficient to find nondisability, but

16   again the ALJ failed to properly explain his conclusions.  Additionally, the ALJ did not

17   adequately explain his decision to reject Plaintiff's subjective complaint testimony, and the

18   ALJ did not make a finding as to whether the two factors on which he permissibly relied

19   would be sufficient, in and of themselves, to justify rejecting Plaintiff's subjective

20   complaints.    Thus, there remain "outstanding issues that must be resolved before a

21   determination of disability can be made."  *See id.*

22                                    **CONCLUSION**

23        Because the ALJ's decision, even as supplemented by the Appeals Council, includes

24   legal errors and conclusions not based on substantial evidence, the Court finds reversible

25   error.  Because there remain outstanding issues that must be resolved before a disability

26   determination can be made, the Court remands this case back to the Administrative Law

27   Judge to explain his conclusions by setting out a detailed and thorough summary of the facts

28   and conflicting clinical evidence, stating his interpretation thereof, and making findings.

1    **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment

2  (Dkt. # 16) is **GRANTED**.

3    **IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary

4  Judgment (Dkt. # 22) is **DENIED**.

5    **IT IS FURTHER ORDERED** that this case is **REMANDED** for further proceedings

6  consistent with this order.

7    DATED this 12th day of November, 2008.

8

9    _____

                          G. Murray Snow

10                      United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28